# CHARLESTON

## JACKSON *v.* STRADER.

Submitted June 15, 1906.   Decided December 18, 1906.

1. TRUSTS—*Resulting Trust—Purchase by Attorney.*

   To charge a person as trustee by reason of his purchase of land on the theory that when he purchased he was attorney at law for a party claiming the land in a suit involving it, it must appear that he was attorney during the pendency of the suit as to such land. (p. 164.)

Appeal from Circuit Court, Randolph County.

Bill by Deborah Jackson and another against J. Floyd Strader and others. Decree for defendants. Plaintiffs appeal.

*Affirmed.*

ANDREW PRICE, for appellants.

DAILEY & BOWERS, for appellees.

BRANNON, JUDGE:

Peter Cowger employed L. D. Strader as his attorney at law to defend a chancery suit brought by one Jarvis against him to compel Cowger to convey to Jarvis a tract of 536 acres of land in Randolph county under a contract of sale by Cowger to Jarvis. While the suit pended the land was sold for taxes in Cowger's name, and was purchased by Talbott and Scott, and Strader purchased the land from them. It seems that Talbott and Scott took a deed under the tax sale. The land was in 1896 put on the tax books in the names of Talbott and Scott and sold for delinquency of taxes in December 1897, and was purchased by J. Floyd Strader, and he took a deed under said tax sale. J. Floyd Strader is a son of L. D. Strader and in 1896 became a partner with his father in the practice of law. L. D. Strader's engagement as attorney for Cowger dates 21st November, 1882, and he purchased from Talbott and Scott in 1891 or 1892. As stated the land was put on the tax books in the names of Talbott and Scott, as stated in one of the bills, by one or the other of the Straders, but the bill does not say by which one. It is probably intended by this indefinite allegation to charge fraud in such entry on the tax books, but it does not seem that the act would be fraudulent; but be this as it may the bill does not show which one of the Straders is chargeable with the act. The said Jarvis suit was decided against Cowger, and Cowger lost the land by decree for its conveyance by Cowger to Jarvis. Cowger died in 1884, and the Jarvis suit went on against his heirs. In 1904 Deborah Jackson, a child and heir of Cowger, and Della Jackson, a daughter of a deceased daughter of Cowger, brought the present chancery suit in Randolph county against the two Straders and the remaining heirs of Cowger to set aside the tax deed made to J. Floyd Strader, stating the said two purchases by the Straders, claiming that L. D. Strader,

having been attorney for Cowger and having purchased the land while such, pending the Jarvis suit, could not purchase in his own right the subject matter of litigation, and that such purchase would inure to Cowger's benefit, and charging that J. Floyd Strader, having become partner with his father, was also attorney for Cowger's heirs during the pendency of the suit, and that his tax purchase also could not stand, but must inure and operate for the benefit of Cowger's heirs, and that both the Straders did but take the land as trustees for Cowger and his heirs. The bills, original and amended, sought to compel J. Floyd Strader to convey the land to Cowger's heirs. Both of the Straders filed answers containing demurrers to the bills, and the court, hearing the case only on demurrer, sustained the demurrers, and the plaintiffs declining to amend their bills further, the court dismissed them, and Deborah Jackson and Della Jackson appealed.

The real gravamen of the plaintiff's case is the attorneyship of L. D. Strader. It is clear that his purchase was in effect only a redemption from a tax sale in behalf of his client Cowger, under the rule that an attorney cannot purchase for himself any outstanding title to the thing in controversy in a suit in which he is engaged as attorney, either before or after the suit is ended, or during the continuance or after the close of the relations of attorney and client, and that such purchase will inure to the benefit of the client, and he may recover the same from the attorney on payment of the outlay by the attorney. Such is the confidence and trust reposed in the attorney, from necessity, so strong the demand of the highest honesty on the part of the attorney holding the secrets of the client, trusted with all the information of the client, with all the facts touching title and other matters connected with the subject of litigation, or consultation, that public policy forbids the attorney to buy in for himself the property involved, to buy in and hold for himself adversely to his client the thing claimed by his client. He cannot speculate or profit thus at the expense of his client. He cannot buy adversely to his client's interest. *Baker* v. *Humphrey*, 101 U. S. 494; 3 Am. & Eng. Ency. L. (2d Ed.) 343; 4 Cyc. 958; *Henry* v. *Raiman*, 64 Am. Dec. 703; Weeks on Attorneys, section 277. *Newcomb*

v. *Brooks*, 16 W. Va. 32, is a valuable statement of legal principles kindred to this case, Likely the lapse of thirteen years would bar relief against L. D. Strader's purchase. But it is useless to discuss the subject of his purchase for the reason that all his right passed by the second tax sale to J. Floyd Strader. So, the only question before us is, Does the purchase by J. Floyd Strader inure to the benefit of Cowger's heirs under the legal principles just stated? That depends upon whether when Strader purchased in December 1897, he was attorney for Cowger's heirs, or had been. L. D. Strader's purchase of Talbott and Scott was in 1891 or 1892. The original bill states that J. Floyd Strader became a law partner with his father in 1896. The amended bill says that he was a partner in 1897 before the second tax sale. The bills are inexact, indefinite and inconsistent in several respects. We must say that J. Floyd Strader was not a partner when L. D. Strader purchased from Talbott and Scott. That is clear. To charge J. Floyd Strader with a trusteeship we must be able to collect from the bills that he was a partner with his father while the Jarvis suit was pending, and that as such partner he was attorney as to that particular suit. The bills must show that such was the case. Now, the decree of the circuit court finally deciding the case in favor of Jarvis was 14th May, 1896. And this Court had so decided the case before that, the exact date of this Court's decision not being shown by the bills, though it is stated in the circuit court decree, exhibited with the bill in this case, that the case had before that been decided by this Court. The report of the case in 41 W. Va. 268, shows a final decree, operating as *res jadicata*, and ending the case November 23, 1895; but we cannot look at that report. However, the bills in this case show that our decision was some time before 14th May, 1896, the date of the final decree in the circuit court ending the case. The bills do not say at what date, whether before or after the decrees losing the land to Cowger, J. Floyd Strader became a partner. One of the bills says that he became a partner in 1896, but whether before or after May 14, 1896, it does not appear. The bill should show the date of this important fact. They should show that when Strader purchased he was such attorney. They should show that he was attorney before a final

decree in the Jarvis suit.     They should show that he was attorney as to the matter of that suit. They do not so show. In the amended bill we are told that J. Floyd Strader was partner in 1897, and attorney for the Cowgers; but the suit had ended in 1896 at latest.     The original bill says he was partner in 1896.     The two statements are inconsistent. Which is the correct statement?     If he became partner in 1897 that was after the end of the suit.     How could he become attorney when the suit had ended?     It is clear that J. Floyd Strader was not partner when his father purchased in 1891 or 1892, and that his father became attorney in these suits long before the son became his partner.     Now, can we assume, without allegation, that the son became attorney as to this old undertaking of his father?     If we assume, we should rather assume that he was partner only as to future business.     One of the bills does say that he was attorney for the Cowgers in 1897; but also says that the suit of Jarvis had ended in 1896, thus defeating that allegation of attorneyship at the date of the tax sale.     I note two passages in the amended bill stating that L. D. Strader continued to act as counsel for Cowger until the termination of the suit, thus importing rather that he was the sole attorney.     So, the bills do not show that J. Floyd Strader was attorney, as to the particular matter of this suit, at any time during the pendency of the suit.     The bill says he was attorney when J. Floyd Strader purchased at the tax sale, but defeats the allegation by showing that the suit had ended nineteen months before, and we are authorized to say long before the tax purchase.     J. Floyd Strader was a stranger to the Cowgers at the time of his tax purchase.     It is not shown that he was Cowger's attorney pending that Jarvis suit, or that any obligation rested upon him as such attorney.

Therefore, we affirm the decree of the circuit court.

*Affirmed.*